DECISION
On October 9, 2001, relator, Phyllis J. Fay, filed this action seeking a writ of mandamus directing respondent Industrial Commission of Ohio to vacate its order denying her application for permanent total disability ("PTD") compensation, and to issue an amended order granting PTD compensation, or, in the alternative, an order which complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Relator's complaint was referred to a magistrate of this court on October 19, 2001, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. After reviewing the briefs, stipulated record, and argument of counsel, the magistrate rendered a decision which includes comprehensive and appropriate findings of fact and conclusions of law. (Attached as Appendix A.) Specifically, the magistrate concluded that this court should deny relator's request for a writ of mandamus. No objection to that decision and recommendation has been filed.
Having now completed our own review, this court concludes that the magistrate properly applied the applicable law to the relevant facts of record. Finding no error in either the magistrate's decision or analysis, pursuant to Civ.R. 53(E)(4)(a), we hereby adopt the magistrate's February 27, 2002 decision as our own, including the findings of fact and conclusions of law rendered therein. Therefore, in accordance with the magistrate's decision and recommendation, relator's request for a writ of mandamus is denied.
Writ denied.
LAZARUS and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS
Relator, Phyllis J. Fay, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order denying compensation for permanent total disability ("PTD") and to issue an order that grants compensation, or, in the alternative, an order that complies with State ex rel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167.
Findings of Fact:
1. In September 1991, Fay sustained a work-related injury while working as a "habilitation technician" for mentally retarded adults. Her workers' compensation claim was allowed for lumbosacral strain.
2. In 1992, when she was sixty years old, claimant completed training at a technical college, where she had studied "Nursing Human Service" for several years. She continued in her employment as a habilitation technician.
3. In 1994, claimant sustained another injury, and her claim was allowed for a wrist wound.
4. In May 1995, claimant sustained a third injury, and her claim was allowed for lumbosacral sprain, acute sciatica, and lumbar/lumbosacral disc degeneration.
5. Claimant continued to work until August 1999, ceasing work when she was about sixty-seven years old.
6. In July 2000, claimant filed a PTD application based on her back injuries. On the application, claimant stated that she completed sixteen years of formal education, including four years at North Central Technical College ending in 1992. She described her work as a habilitation technician from May 1989 to August 1999, explaining that she used sign language with some residents and did basic charting on each individual, along with strenuous duties that involved constant walking and standing, and substantial lifting. She stated that she supervised eight employees. Prior to that employment, claimant worked one day per week doing office cleaning, and also had a job in which she supervised cleaners on "as needed" basis when tenants moved from apartments. The PTD application was supported by a June 2000 report from Ho-Young Chung, D.O.
7. In February 2001, claimant was examined on behalf of the commission by James Wanken, M.D., an orthopedic surgeon. His report, which is described at length in the commission's order (quoted infra), included the opinion that claimant could perform sedentary work, which was described as exerting up to ten pounds occasionally and/or a negligible amount frequently, sitting most of the time, with walking or standing for brief periods of time.
8. A vocational evaluation was provided by Robert Breslin, who noted that claimant was sixty-eight years old. He commented that, although that was three years past the usual retirement age, there were individuals who worked full-time and part-time at that age. He noted that a worker's older age may adversely effect ability to adjust to new environments and may result in loss of physical and cognitive abilities. In regard to claimant's education, Mr. Breslin opined that it was adequate to perform the basic demands of most entry-level semi-skilled and unskilled occupations. He found that claimant's history of steady work was a vocational asset, as was her relatively recent date of last work in 1999. In regard to vocational rehabilitation services, Mr. Breslin stated:
 Claimant has reportedly expressed interest in vocational rehabilitation services, suggesting a continued interest in working. Claimant has also acquired vocational training as recently as 1992.
Mr. Breslin concluded that, although the work as a mental retardation aide was skilled employment, claimant did not have vocational skills transferable to sedentary work. However, Mr. Breslin concluded that there were entry-level sedentary occupations that claimant could perform, such as assembler, inspector, packager, information clerk, order clerk, cashier, etc. He concluded that, with "brief skill training," claimant could work as a medical assistant, admitting clerk, or medical billing clerk. Mr. Breslin further concluded that, if the opinion of Dr. Chung were adopted, claimant was unable to perform any gainful employment.
9. In August 2001, a hearing was held on the PTD application, resulting in an order denying compensation:
 This decision is based upon the reports of Dr. Wanken and Mr. Breslin.
 The claimant is 68 years old with 16 years of education. She has the ability to read, write, and do basic math. In 1992, at age (60), the claimant completed course work and apparently graduated from North Central Technical College. She has an approximately (17) year work history as a Habilitation Technician and a Cleaning Supervisor.
 The claimant has three work-related claims. The oldest * * * occurred on 09/02/1991.
 The claim is allowed for the condition of acute moderate lumbosacral strain. * * * [T]he claim was disallowed for the condition of "aggravation of pre-existing degenerative disc disease" per District Hearing Officer order of 01/12/1999. Treatment in that claim has been conservative in nature. Claim 94-544608 is allowed for the condition of open wound wrist complicated right. * * * The injured worker's counsel made no argument that the 1994 injury was in any way contributing to the claimant's alleged permanent total disability status. The claimant's most recent injury occurred on 05/14/1995. * * * Treatment in that claim has been conservative in nature. That claim is allowed for a sprain lumbosacral, acute sciatica and lumbar/lumbosacral disc degeneration. The claimant last worked on 08/16/1999. The claimant has not received any rehabilitation services but would be interested if such services were available.
 Dr. James Wanken, M.D. (Orthopedic Surgeon) * * * states the claimant has no permanent disability related to the wrist injury of 1994. In regard to the allowed back conditions in claims PEL104466 and 95-415908, Dr. Wanken finds a 16% permanent partial impairment. * * * Dr. Wanken finds the claimant retains the ability to perform sedentary work. The Staff Hearing Officer finds Dr. Wanken persuasive.
 * * * Mr. Breslin notes that the claimant's age of 68 is (3) years beyond the customary retirement age and may adversely affect her ability to adjust to changes in the work environment or work demands. Her 12th grade plus education is noted as adequate to perform basic demands of entry level unskilled and semi-skilled occupations. Mr. Breslin notes transferable knowledge if the claimant were to focus her occupational attention on employment in the medical fi[eld]. Nevertheless, Mr. Breslin gives examples of jobs the claimant could reasonably be expected to perform immediately or with appropriate academic remediation or brief skill training. * * *
 The Staff Hearing Officer finds that the claimant's age of 68 is not an asset to reemployment[;] however, in this case, it is not a barrier either. The claimant worked until two years ago when she stopped working at age 66. Thus, this person has a recent work history and understands the demands and expectations of current employment. The injured worker testified that she had intended to work to age 74. This intent implies the claimant herself does not view age as a barrier to employment. Also, at approximately age 56 the claimant enrolled in, and subsequently completed four years later, a nursing program at a technical college. The Staff Hearing Officer finds this to be an atypical age to obtain advanced training and reflects again on the claimant's failure to view age as any barrier to her. Consistent with this injured worker's attitude, she indicates, at age 68, she is interested in rehabilitation services. The Staff Hearing Officer finds age is not a barrier to employment.
 Nor is the claimant's educational background. As discussed above, the claimant has demonstrated her ability to learn new skills and obtain academic remediation. As recently as 1992, the injured worker obtained advanced schooling to enable her to obtain better employment. Education is an asset to reemployment.
 The claimant's work history would, at worst, be considered a neutral asset. While she may have no specifically identifiable transferable skills, she has training and knowledge which could be used in the medical field. She has also demonstrated her ability to learn the skills necessary to obtain and maintain sustained remunerative employment. The Staff Hearing Officer finds that based upon the injured worker's age, education and work history, she possesses the ability to develop the skills necessary to engage in entry level, unskilled, sedentary work.
 Therefore, because the claimant is capable of performing sedentary work, and because she is found to be qualified by age, education work history to obtain and perform work at the sedentary level, the Staff Hearing Officer finds the claimant * * * is not permanently and totally disabled. * * *
Conclusions of Law:
Claimant argues that the commission abused its discretion in denying PTD compensation. There are numerous judicial decisions setting forth principles that govern the court's review of a commission PTD order. See, e.g., State ex rel. Ellis v. McGraw Edison Co. (1993),66 Ohio St.3d 92; State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373; State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139; State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203; Stephenson, supra. The issue before this court is whether the commission's decision was based on "some evidence" in the record and supported by an adequate explanation of its reasoning. E.g., Noll.
In the present action, claimant acknowledges that, while she disagrees with Dr. Wanken's opinions, the commission was within its discretion to rely on his medical report. Claimant challenges the vocational analysis of her nonmedical factors such as age, work history and education.
In its analysis of age, the commission found that claimant's age of sixty-eight years did not render her unable to work, which was within its discretion. State ex rel. Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414. The commission relied on the fact that claimant had attended a technical-school program relatively late in life, and that she had expressed interest in continuing to learn and work past the usual retirement age, as indications that her age would not prevent her from being an active participant in the labor market. The commission's interpretation was within its discretion. Although a claimant is not required to prove a desire to continue working beyond the usual retirement age in order to receive PTD compensation, the commission was within its discretion to view this claimant's recent vocational training, and her expression of interest in further work and training, as indicating that her age would not prevent her from being employed.
In regard to education, claimant not only had a high school diploma but attended a technical college program in "Nursing Human Services," training that she used in her employment. Claimant argues that the commission, by describing the program generally as a "nursing program," indicated an erroneous belief that claimant trained to be an R.N. or ward nurse. The order as a whole, however, does not indicate that the commission misunderstood the nature of her employment or vocational training. Claimant has not demonstrated an abuse of discretion.
Given that the commission may view a high school education as an asset, Ellis, supra, the commission was within its discretion to view claimant's training in technical school, at an older age, as a vocational asset. Moreover, the claimant stated that she could read, write and do basic math, and the commission may rely on a claimant's ability to read, write and perform basic math — even if not well — to support a conclusion that claimant is capable of performing an entry-level position. State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354.
The magistrate concludes that claimant has not met her burden of proof in mandamus of proving that the commission had a legal duty to award her PTD compensation. The evidence was susceptible to interpretation, and the commission was within its discretion to determine that the combination of vocational factors would permit her to perform sedentary work. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.